Good afternoon, Illinois appellate court first district court is now in session. The sixth division, the Honorable Justice Sharon Johnson presiding case number 22 dash 0547 Stephanie Ipina versus TCC Wireless. Good afternoon. Good afternoon. It's come to that, let me introduce myself first I'm just as Sharon Oh Johnson and I am joined by my colleagues, Justice Michael behind them and justice Carl a Walker. Can I have councils put your appearances on the record, please. Your Honor, this is Paul Castiglione I'm going to be arguing for the plaintiff appellants today I know it says James Bourne is on the screen but it's it's Paul Castiglione. Okay, are you able to change your name there please. Um, well I'll change it. I'll change it. Thank you. Thank you. And good afternoon, Your Honor, this is James rose telephonically for the appellee TCC Wireless, I apologize for the confusion I'm having some internet problems and have not been able to log on but court administrator helped me dial in from this number. Okay, very good. I'd like to ask opposing council if there is any objection to us proceeding without your video being operable without being able to see you do you have any objection to that attorney Castiglione. None at all, Your Honor. Okay. And what about you, attorney rose Do you mind appearing without your video being operable. Well no I don't, I don't want to inconvenience everyone and delay things I'm prepared to proceed, if it's hard for the court to hear me though or difficult in any way, I'd be happy to reschedule if you'd prefer that I'll come there in person or I'll find another way a different day to get a working computer I apologize, but I'm, I'm prepared to move forward if it's convenient for all of you. Okay, I can hear you just fine. And it's my understanding that my colleagues also are in agreement with proceeding was that correct. Okay, thank you very much. Okay, so we will begin you'll each be given 20 minutes in which to present your argument. The appellant will have an opportunity to give rebuttal and attorney Castiglione How would you like to divide your time. Your Honor, if I could split it up 15 minutes and five for rebuttal, I'd like to do that. Okay, very well you may begin. Your Honors, thank you. Good afternoon. Your Honors, may it please the court as indicated at Paul Castiglione and be here for plaintiff appellants. Your Honors, this is a case brought under the biometric information Privacy Act, BIPA, and where it all started was in defendant piece, we know how it started. So, the question is, we're here on the decision on arbitration correct. That's correct. Okay, well there were two decisions that one and there was a we moved for leave to propound discovery and that was denied. Okay, that's great. But the major one is the arbitration. That's correct. Okay. And there was the Garcia case where the console for both sides were the same. If I'm not mistaken, counsel on both sides. Exactly. And my understanding from both sides is that the plaintiff in this case was a member of that class, but did not receive notice. Is that correct. Well, that's yes, Your Honor, but I would note she was also not on the list, the class list that defendants prepared. Yes, no, I understand. She was, but she was a member. My question was she was a member of the class, but did not receive notice. Absolutely right. So therefore, she wasn't part of that settlement having no notice of the settlement and there's no contentions, otherwise. That's correct. That's undisputed. Okay. And I also understand from the bracelet, though, it stopped before us if there's, there was another case filed in connection with the Garcia matter. With regard to this issue of the failure of the class notice to certain members. That's well what happened. Yes, Your Honor, after this was dismissed by the trial court, we did try to go in at that point in Garcia and try to reopen the judgment there and that was that we filed a motion under to section to 1401 that was denied. So we tried that it didn't work. Okay. Is that case on appeal. It is not. Okay, so the only action now is this one. That's correct. And Mr. This is not important, but they, they, how do you reconcile that with they make a statement in their brief that they actually offer her an opportunity to become a part of the class later on and she declined that. Yes. Yeah, Your Honor, that is not correct. That did not happen. In fact, what happened was that in their brief. Correct. Yes, we dispute that. What happened was after the settlement was was finished in Garcia and and the Garcia class, by the way, extended from all all persons working for the defendant TCC wireless between October 21 2012 to February 28 2020. And what happened was after the Garcia settlement was effectuated. Um, I Pina contacted our office and said she was excluded from the Garcia class and that's at C 160 C 147 and C 168 of the record. And quite a few people started to reach, reach out to us so what happened Your Honor is we reached out to defendants and said look we need to work this out. And we also in that gets at C 176 is an email on the record saying in an effort to keep this matter from escalating needlessly. We asked for details about I Pina to find out if this was just a one off or was this much broader. I would add eventually defendants acknowledge that there was over 100, and we don't know exactly how many people in I Pina's shoes who were who were excluded. Their explanation for that was it had to do with acquisition of different stores they kind of just felt between the cracks these employees and we're not included on the class list and that's not in the settlement. Now, as Justice Hyman said earlier, we kind of know the facts. All right, kind of get to your arguments because I want to what I really want you to do is sort of walk us through your estoppel argument. Go to the evidence and tell us why that applies and I want to just give counsel a warning that I'm going to ask the same question of the employee. Well, we've heard that he stopped my argument your honor in the Garcia case in 2018 there was a motion to compel arbitration there before then now retired circuit judge Diane Larson, which judge Larson denied and she died it because of the arbitration exception in section 12 of the employment agreement, which state was said for civil actions of a summary nature where the relief sought is predicated on there being no dispute with respect to any fact. The judge lessons that there's no dispute here about the collection of fingerprints, or, or, or finger scans. Therefore, that exception applies and the arbor and the motion to compel arbitration, she denied. Now, we feel that that the defendants here your honor are collateral he stopped from relitigating this in this IP in a class action. And the reason is that just as there was no factual dispute in the record there there's no factual dispute in the record here. All the defendants did here was they added from the last time was they added a declaration from TCC wireless is chief financial officer Eric to research, saying, quote, there are fair various factors. You know what the evidence that we read it's very short. But why do you think that affidavit has no effect whatsoever. Your Honor, I think it has no effect because it's conclusory it doesn't specifically didn't it doesn't say we didn't finger scan IP and we didn't finger scan other members of the IP in the class, it doesn't deny that it just gives a very vague it doesn't really mean anything by so lacking in specificity. If you know under like the standards for affidavits under rule 191 it wouldn't it wouldn't work you there wouldn't be a proper, there wouldn't be a proper statement and affidavit. And I think the same thing applies here I don't think it creates a question of fact, did you file a motion to strike the affidavit. No well we did was we just responded saying look this is the motion to compel should be denied because just add this affidavit doesn't change anything. So we disputed it in response to the motion to compel. And, you know, so we feel there was really no difference so you had the same factual predicate before Judge Larson and Garcia that was before a trial court here. And it doesn't matter, doesn't matter that there was an affidavit, and under your reasoning, and I say that because is understand what you are saying that Judge Larson. The issue before her was arbitration that action was both argued by both sides. And the judge ruled on. That's right. And so, that issue has been resolved. So it's all better, whether there's an affidavit here whether it's conclusory or not. I mean you know that's a good point right it may not, but even giving them the benefit of the doubt saying it somehow changed the issue. I don't think it did because the affidavit was no it was it was it was ineffective. It included a conclusory statement but that's a very good point. The fact is the issue was resolved. So coming back with, you know, to try to relitigate it goes what goes against the rule you know the whole principle of collateral assault. You know there was also go against the whole idea I mean under your theory. I'm just asking. But if she is indeed a class member which apparently she is everybody can see she's a class member that didn't receive notice. Right. So she was excluded but as a class member. She is in the same position as anybody else was in that litigation. Yeah, she should have been. That's right. That's right. Is that part of your argument. That's part of my argument as well your honor I think the issue is identical to the one presented here. There was a final judgment on the merits Garcia went to a subtle and there was a final order and judgment honored and party against whom established asserted was TCC wireless or the party here and in fact, so you have the same yet TCC wireless is the defendant here. You had the class representative Edgar Garcia and Garcia, and you had a peanut who was a member of the Garcia class here so everything lines up so collateral stop will absolutely TCC wireless should have been collateral he stopped, we believe, from bringing the motion to compel arbitration and it should have been should have been denied. We offered isn't there an issue where I peanut was, I guess worked at a different store that was later acquired by TCC wireless. And so isn't that an issue that distinguishes it from the Garcia class. I don't think so your honor because even if it was acquired she still fell within the class definition and Garcia, because she was a TCC wireless employee. So even if there was an acquisition and we don't doubt that there was there may be multiple acquisitions, the employees in those acquired stores were members of the should have been members of the world were members of the Garcia class they just didn't all participate in the Garcia class settlement. In fact, they were excluded by in terms of the class list. Well they agree that she was should have been a part of the class they're saying they made a mistake so that kind of goes to your unclean hands argument, though, but I want you to. Well I think you're pretty much done with this topical because you've you've given us your reasons unless you have more to say on that did you don't, I can no no I don't your honor I could go on unclean hands which is our alternative reason why the decision below the motion should have been denied and that is. Now and I want you to kind of address this is Dustin's question here though, because that's where I think that she's raising your hand they have unclean hands with just the same. That is she states the facts that they, they didn't, they came in a different way they didn't own that company that that business originally they acquired it, and they've already taken the biometrics at the time that they acquired it. Absolutely. Your Honor, the, you know, unclean hands, the three elements unclean hands misconduct that amounts to fraud or bad faith made toward the moving party related to the subject matter of litigation. And what we had below was we raised that as a defense to motion to compel arbitration saying look this is motion to compel arbitration is injunctive in nature. And we as the as the non moving party, we felt we were entitled to bring up unclean hands the problem with the decision below was was motion to compel arbitration or granting of it is essentially it's like granting a to 619 motion to dismiss. We say there was a question of fact. Now I know about the acquisition, and I know understand TCCs are spirals his argument hey this was inadvertent this was a mistake. And maybe that's so, but we don't know at this point that we're at the pleading stage where we in this goes to be our, our motion which was denied which was to propound discovery. We wanted to propound discovery to find out two things really your honor. One, why weren't the why weren't I Pina and the members of the IP class included within the class settlement in Garcia number one, number two already, you already know that answer was a mistake. Well, we don't know that and that's their position we haven't been able to do discovery to find out, was it was it something more of a mistake. Okay, and they really never complained on that and I think that's our position as well you know what we would do discovery and we would say we think we should win on collateral stop anyway judge, but additionally we think we should have been able to do discovery would like to do discovery to find out how much for one thing to find out how many different people standing and I penis shoes are out there and find out what whether in fact, you know, there was good faith or bad faith here. So if you conduct discovery and you find that there was some other reason as to why a peanut was not included in the Garcia class, then doesn't that defeat your collateral stop argument. Well, I don't think so judge I think the ground justice I see I don't think so because, you know, the, we met all the elements for collateral stop all there's a final judgment that this was litigated the same parties. If we find out there was bad faith in terms of exclusion, that would just only go, it would mean a couple things would mean that they on the basis of unclean hands as well. But I'm saying not if you find that there was bad faith, but if you find that there was some other legitimate reason as to why they were not. I don't know. Okay, I'm sorry around I didn't understand your question. No, I don't think that would affect collateral stop because that just goes to the issue that Judge Larson dealt with in the trial court and Garcia. Was it appropriate was there a question of fact that took this outside the exemption for arbitrate the arbitration exemption, Judge Larson found, no, there was no question of that. And there isn't one here either so even either of us, whatever we would find on discovery collateral stop would still apply here your honor, and the decision should be reversed on that basis, we would have one more question. With regard to the Pina complaint in the Garcia complaint. Other than the change in plaintiffs and a little discussion about the Garcia case in your complaint. But the, the claim itself, and the arbitration agreement itself is identical. I mean, these cases are mirror images. Absolutely, Josh. They very much are and you know, we only filed the Pina class and claim in the first place during negotiations we'd asked for a tolling agreement, so we could continue to investigate what happened to IP and others like her and defendants weren't really weren't willing to do that and that's why we ultimately filed the class action. Now at the time, case law was not clear what the statute of limitations on BIPPA was McDonald would not be decided for two more years, where it said it was five years we didn't know that in the in the spring of 2021. So absolutely judge and that's why we filed the complaint. We feel there's a good day good faith basis, we feel commotion and arbitration should not have been granted. So for these reasons, your honor, we would ask that the decision below be reversed in its entirety. And I would like to reserve the rest of my time for rebuttal unless the court has any other questions. Any other questions. Okay, thank you very much. Attorney rose. Thank you. Your Honors, I think I probably just jump right into the collateral estoppel issue since that was the focus of your questions and that the very first prong is the one that's not satisfied this issue is not identical. And here's the real important point in the 2017 case. Judge Larson did not rule that the arbitration provision was unenforceable. It's not like the Garcia plaintiffs argued, and she ruled that it was unconscionable, or that they didn't sign it or that they didn't have capacity at the time, it was agreed. She ruled that the reason the exception applied in that particular unique case is because TCC wireless didn't properly support its motion under 2619 with evidence or an affidavit. That circumstance doesn't apply here you don't even need to go as far as you were justice into the details about the acquisition of the additional store, although that would be a factual distinction that would come up if this case were ever litigated or arbitrated. Go ahead. Can you give us a case where give us a case where the court says that the reasoning. With regard to the ruling is the basis for denying collateral stuff. You're saying, it's the reasoning. And then the fact that there's an app before we even get to whether the affidavit is, is something that can be considered or not, knowing what counsel's argument was. I want to know, you know, I haven't seen cases, quite frankly, and again, like, like the Illinois law that says, yeah, if the judge ruled on reason a, and the jacket rule on reason B, then there's no collateral sample. Well, I think the cases are all of the collateral sample cases your honor that say the issues have to be identical. That's the part of the issue, but the issue is identical. The issue is arbitration, or no arbitration, isn't it. That was the motion wasn't it. That was the motion. Yeah, but, but the reason for the courts ruling was not identical. Yes, not identical. Yes. And that's, that's exactly my question. So, answer my question. The reasoning wasn't was different. So what, give me a case in Illinois that says that you look at the reason that the judge rule. And that's a part of a collateral sample test. I do think that, for example, the Hurlburt case that I cite on page 27 of my brief, it doesn't use your words, your honor, it doesn't say that we look at the reasoning, but I think that's inherent in the first prong. I think that's the only thing that the first prong can mean is that the, the prior adjudication must be identical as the one presented in the first law. And that and that was okay says that you even you can see that no case says that and, and, and to use some broad language that you said on page 27 I'm looking at it now. The issue decided and the prior adjudication is identical. It's the issue is identical, the issue is identical you're saying the reasoning. How is that in there at all. And Hurley. Well, I think if the final judgment in that case had said this provision is unenforceable no party can ever compel arbitration under this provision that would have preclusive effect, but that's not what happened in that case, that's not what the judge. Of course, because that's not the way the courts operate do we, we can't say that no court could make sure they do know the case. Sure they do your honor. No, that's not how collateral separate works, we only have the case that's before us. We can't we're not ruling on cases that aren't before us because in that the difference in this case, I'm just proposing this to you. But what you're saying is that a. You can see do you not that she was a member of the classes did not receive notice correct. Yes, correct. So she should have received notice. There's no question about that. And her claim is identical. I assume you would have concede her claim is identical. So, is that correct. I don't think it is identical. What's different about the claim in the claim in Garcia. The fact that she wasn't on boarded in the way the other class members were the fact that her story was. I hate to interrupt you but, and I'm sorry I interrupt you but not seeing you makes it tougher to, because you can't see me either. So I apologize. Understood. Understood. And you can interrupt me don't don't, you know, because we're doing this. For all of us I think this is kind of unique. But, but that's not true because you say that she was a member of the class. Okay, she should have had noticed. And that's conceded. She should have had noticed and we wouldn't be here. Okay. She did, for whatever reason. Okay, that's that what we're here for. So, I don't. I'm trying to. So there is no difference. She would have been a member of that putative class, which was later certified and was settled. And the issue that part is true. Okay. And the issue that was decided in the case had to do with whether the arbitration agreement applied to all these putative class members. And it did, and for whatever reason, defendants did not provide an affidavit. But, but it doesn't really matter because no case says that we look at the. The reason why the. Motion was granted or denied. We look at whether the motion was granted or denied. No, I really don't agree with that. You're on. Okay. So tell me. So tell me, tell me, give me law in Illinois. That supports your position. The best I can do is the collateral estoppel case that I just pointed out. I didn't have a disagreement about what that means. I mean, can I give you an example, Your Honor. The scenario that you're outlining, if, if one of the class members had said, wait a minute, we didn't sign that arbitration agreement or that where you usually see this. In a collateral estoppel situations where somebody says that arbitration provision is unconscionable. It's procedurally or substantively unconscionable and we shouldn't have to arbitrate for that reason. And a court looks at it and says, you know what, you're right. I'm not going to send these parties to arbitration or, or somebody says that's a narrow arbitration provision that only covers for example harassment claims or termination claims in the employment contract in the employment context. And for that reason, I'm not going to compel these people to arbitrate. That's a legal ruling. A final legal ruling that would have preclusive effect. That's, I would say, fundamentally different than what happened here. Saying that the moving party didn't properly support its motion as a procedural matter under 2619 is very different than making a legal ruling as to the enforceability of the provision and it does not have preclusive effect. Okay, Mr. Rose, that was the initial point that you made, and you were asked the question why this case was different and you said it was different because an affidavit and I think that's where your stronger argument is. But just a second ago when Justice Hyman asked you a question, you said this case is different because her company was acquired. So you may want to, I'm not sure that that makes it any different and I'm not even going to ask you to argue that because I'm not even sure that that takes you anywhere. That's helpful to you. But I want to come back to what about this affidavit that makes the case different. You're saying it's different just because an affidavit was filed. I want to know what's stated in the affidavit that makes it different. Sure, I'll answer that question. That also helps explain my prior reference to the after acquired store. So the basis for Judge Larson's ruling is she said the absence of the affidavit proves that there is no dispute of any fact and this is just a summary proceeding and we can rubber stamp it and so there's no reason to go through an arbitration. The affidavit in this case says the facts alleged in the complaint are disputed. There is evidence saying it's in dispute. So you would have to have a proceeding in arbitration. You would have to have a fight about whether Bipple was violated, about whether she was fingerprinted, which is disputed, about whether there was a policy in place at the time this happened, which is disputed. Why wouldn't those facts be indicated in the affidavit such that the trial court would have access to that in making this decision? That's a great question, Your Honor. There is a good reason for that because if the court thinks that we are making substantive arguments, there's Illinois law that says that could be considered a waiver of our right to arbitrate. You have to walk a very fine line and the reason we have to do that is because of the strange ruling that Judge Larson made in the first place saying that you have to submit some sort of affidavit and that's why there wasn't a legal ruling in the first place. But we're trying to walk that line the second time around. We're providing substantive evidence in an affidavit, which we've been told is necessary. But we can't go too far down that road and offer up a substantive defense or start fighting the case on its substance because then we're in danger of a court saying, wait a minute, you've waived your right to arbitrate. If you start making substantive arguments, you're participating in this proceeding. But the problem, though, is that with what you've alleged, this case is no different from the Garcia case. There appears to be no factual issues based on what you've alleged. You're just simply saying, yeah, there's factual issues, but you were not detailed in what those issues are because now what you're stating is the exact same thing that was in the Garcia case. That's what you're telling us now. And you've already admitted that she was a part of the class or at least should have been a part of the class in the Garcia case. She should have been a part of the class. She should have been able to participate in that settlement. We offered her that settlement. She rejected it. So why is she any worse off? She has the rights that she had. She has her contract rights. She can bring a claim in arbitration. She just promised that if she ever does that, she'd file an arbitration, not in circuit court. I want you to finish your point, but you said something along the way there. Earlier, Mr. Castiglione said that that's not correct. So do you want to just argue that a bit? Because he seems to disagree with you that you guys offered her to be a part of the class and she declined. He says that never happened. And I suspect that's a bit of semantics. I mean, what we told her when she came to us is, look, this is something that really should be addressed in the context of the Garcia case. If you think you were excluded from that case and you should have received notice and that class needs to be modified, you need to go back to that case and make that argument there. What do you mean by if she thinks? You've already said that she should have been a part of the class. So just stay with us so that things make sense, because when things start not to make sense, you make it real difficult for us to follow you. Well, apologies, Your Honor, I'm trying to recreate the dialogue that happened initially before we had ascertained that, in fact, she should have received notice. And part of this dialogue is. And you agree, though, right? I'm sorry, I don't mean to interrupt you, Mr. Rose, but it's just that you agree she should have received notice. You agree that she should have been a part of the class, but you keep using these terms as if you're not sure that you agree with that. No, we agree that she should have received notice and she was entitled to be part of the class. Once we determined that, we offered her the exact same settlement that the rest of the class had. What I think appellant's counsel is saying is that we didn't offer to make her a member of the class. We couldn't do that in the context of this lawsuit that she filed against us in the IPENA lawsuit. That's something that could happen in the context of the 2017 lawsuit, the Garcia lawsuit. But we absolutely made her the exact same offer that she would have received had she been a member of the Garcia class. Well, it doesn't make sense then. If that is true, then why didn't you just consent to allow the absent class members who should have been a party to be made parties and receive notice and receive the settlement in Garcia instead of contesting Garcia, which you did and the judge ruled in your favor, apparently, from what I understand. So you're saying, oh, you should have gone to Garcia. They did go to Garcia. You objected to Garcia. You went in both ways. So now they did. The only thing they can do is file and pursue this independent case on behalf of all these people who are in the same position as her. This is a class action. No, no, no. Respectfully, Your Honor, you've got the chronology wrong, with all due respect. She didn't go back to Garcia and ask to be made a part of that class. Instead, she sued us in circuit court, which she knew she didn't have permission to do, fought tooth and nail to have a class certified, another right that she waived. Only after she lost, only after she lost on the eve of the two-year deadline, did she go back to Garcia and say, well, I tried to file my own class action and it didn't work. So now I'm here to assert my rights that I've known about for the last year. That's why the Garcia judge said this was not diligent. I'm not going to allow you to do it after the fact. It looks like you've been forum shopping and that's not appropriate. If you had a right to come back here, you should have done it immediately. Well, wait, wait a minute. I'm confused. Is there a third case or are you talking about this case? No, I'm talking, there's only two cases. Okay. So you're saying that they still had time in the statute of limitations. And so they filed a separate case. And so you could have still resolved it by going back to Garcia. You instead litigated this separately. I mean, you make it as if it's the fault of the plaintiff when even by your own terms, you say it was a mistake by the defendant. Yet the defendant doesn't want to correct it, apparently, because you didn't want to have Garcia be the, I mean, it seems to me that you would have gone right to the Garcia court and say, hey, we got to fix this up. Instead, you litigate for two years. Then, as I understand, you refuse to give a tolling agreement. And so they pursue this. Again, it sounds like you're just trying to keep these hundred, whatever number there are, from getting the same relief they should have gotten. And class council is doing what they have to do to protect members of the class who they have been assigned to represent and whose fault of not getting the notice was not theirs. Under any circumstances, it was yours. So I'm trying to understand why we're here. Okay. And Attorney Rose, if you can just respond very briefly, your time has expired, but I'd like to give you an opportunity to address Justice Hyman's comments, and then it appeared that Justice Walker may have had another one final question. Very well, the response I get to that is that I'm not I'm not trying to attack counsel here, but your honor respectfully, I disagree with that assertion that counsel in filing this new lawsuit is doing what he had to do in order to protect the Garcia class. The Garcia class could have been amended in the Garcia case. That's why the Garcia judge said you weren't diligent in coming back here to make sure everyone's rights were protected. Instead, because they didn't like the results of the Garcia case, because they didn't feel they got a good enough settlement there, they tried to start a separate class action and avoid the clear language of the arbitration agreement. There's no dispute that this claim is subject to that arbitration agreement. And that's the very limited thing. That's the only issue that the circuit court in this case ruled. And that's why it was appropriate to dismiss this case. Right, just so I will come back. I wasn't going to ask my question, but it comes back to what Justice Hyman was asking. But when when they after they lost in this case, they went back to the circuit court. And you basically defend it and the circuit court ruled in your favor. Is that correct? Correct, because they were not. Go ahead. I'll let you explain. Go ahead. I'm sorry. You can explain. Go ahead. The answer is yes, Your Honor, that you're correct. In the explanation, it's a yes, because if you start explaining, I think it just it's like you're saying you're behind you're digging a hole because it's a yes answer. And then the other thing is, and I just want to make sure that this is just not a mistake. And that you're just you're just you just don't quite remember. But I read in the record that you all already admitted that there were 238 employees left out and you keep using this term 100 employees left out. And that's that's twice that number. So I just don't want it to appear deceptive that you're just making a mistake. Right. You do agree. There's there were 238. Correct. I don't think there's anything in either record that identifies the number. Your Honor. There's nothing in my brief that talks about either number. I think the plaintiff has alleged The briefs are not the record. The briefs are not the records, but that's fine. If you don't recall, it's okay. I mean, if that happens, we all we all forget. Okay, thank you very much. Attorney Castiglione, you have five minutes for rebuttal. Your Honor, thank you. I'll try to be as brief as possible. Um, you know, the turns out in this case in the record. In this case, the discussions after we learned about IP now are at C-176 and C-177 of the record. And I think it makes it quite clear we were trying to work this out, which is the normal course of practice in a class action. If any number of members slip between the cracks and Justice Walker is right, it could be several hundred. We have no idea. That's one of the reasons we wanted discovery, but we tried to work it out. We couldn't. We couldn't get a tolling agreement. We filed the IP in a class action. We didn't know what else we could do to protect the absentee members of the Garcia class who didn't participate. One final time. Can you respond to counsel's assertion that they did offer your client the same settlement as what was offered in Garcia? They did not. We tried to work it out for IP and anyone else. We wanted to see how did what was important to us, Your Honor. How did IP get excluded? Because we thought that would be it would give some explanation as to who else might have been excluded and why. And we wanted to protect all of them. But no, there was no settlement offer. We tried to work the whole thing out. We couldn't. And that's like I say, why we end up filing the class. I just want to get the timing right. From what counsel said, it sounded like from what they said that you filed this action without going back to Garcia and then this was a Garcia was an afterthought. That's how they seem to explain it. What am I getting? I'd be glad to, Your Honor. No, it was not an afterthought. We filed IP in May of 21. At that point, we didn't know what the statute limitation was. We had concerns about the absentee Garcia members who didn't participate. The clock was rolling on them. That's settled after that settlement agreement, which was in 20 clock was rolling and we might be we might have been looking at a one year statute limitations in total back then. So we don't we know now under from McDonald that it was five years that we didn't know what done. So, taking everything into account, we thought we have to go this route, we have to go to the filing of the new class route claims were within the statute under any reading of the statute. So we felt that was the safest way to go for the absentee class numbers. So that's why we did that. Yes, we did eventually go in Garcia and try to open it up thinking, well, all right, this didn't work. We're going to appeal this. In the meantime, if we could get some relief from the trial judge in Garcia under a 214-01 motion, all the better if that would work. Well, that didn't work either, which left this. We were concerned that we needed to do this initially as a class action IPNA to protect the rights of IPNA and the class numbers. As it turns out, this was the only avenue we have and we had and currently still have. Beyond that, if you don't have any other questions, the only thing I would add in terms of a public policy issue with this case, how this case is resolved, is that affirming the decision below could encourage gamesmanship and create a playbook for sloppy or even unscrupulous class action defendants to game the class-wide settlement process. Clearly, that's not how class actions are supposed to proceed. It's not good for plaintiffs who join or who are in a class action. Affirmance here would be a rich reward for a defendant who acted incorrectly, if not improperly, and it would cause an injustice to the plaintiff, IPNA, and the putative class that the court is obliged to protect. So for all those reasons, Your Honor, we would ask that the decision of a trial court below be reversed in its entirety. Thank you. Thank you very much. I want to thank both counsels for your arguments today. They were very well versed in the facts as well as the relevant law and have given us quite a bit to consider when making our decision regarding this case. So thank you very much for your excellent presentations. And that concludes this matter. Thank you.